UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| ROGELIO A. LAPLANA, ) | Case No.  6:05-bk-17635-KSJ |
| DAISY B. LAPLANA, ) | Chapter 13 |
| ) | |
| Debtors. ) | |
| ) | |

MEMORANDUM OPINION DENYING
DEBTORS' MOTION TO RECONSIDER ORDER CONFIRMING CHAPTER 13 PLAN

Mr. and Mrs. LaPlana are above median income debtors residing in Florida who have confirmed a Chapter 13 reorganization plan spanning five years. Paragraph 16 of the Order Confirming Debtors' Chapter 13 Plan (the "Confirmation Order") (Doc. No. 44) provides that "All future refunds from the Internal Revenue Service shall be turned over to the Chapter 13 trustee for distribution to the general unsecured creditors who have timely filed unsecured claims."  The debtors, in their Motion to Reconsider Order Confirming Debtors' Chapter 13 Plan (the "Motion for Reconsideration") (Doc. No. 46), now object to this provision in the Confirmation Order arguing that it violates the formula set forth in Bankruptcy Code[1] Section 1325(b)(2) for determining the amount of disposable income the debtors must pay into a plan in order to get a discharge.

Because the debtors filed this case on November 28, 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), effective on October 17, 2005, applies. BAPCPA substantially modified how a debtor's disposable income is to be calculated, and courts have differed on the acceptable methodology for applying those calculations in

---

[1] Unless otherwise stated, all references to the Bankruptcy Code herein refer to Title 11 of the United States Code.

connection with Bankruptcy Code Section 1325(b)(1)(B)'s requirement that debtors use all of their "projected disposable income to be received" during the life of the plan to pay their unsecured creditors. The specific issue presented in the debtors' Motion for Reconsideration is whether the debtors' future federal tax refunds are subject to turnover to the Chapter 13 Trustee for distribution to the debtors' unsecured creditors. In order to resolve this issue, the Court must decide how the debtors' projected disposable income should be calculated under BAPCPA, which will affect these debtors as well as all other above median income Chapter 13 debtors who filed their case after October 17, 2005.

Reconsideration is not merited. As a threshold matter, the Chapter 13 Trustee argues that reconsideration of the Confirmation Order is not appropriate.  The Chapter 13 Trustee had circulated the proposed confirmation order to the debtors and to debtors' counsel substantially prior to the confirmation hearing, held on June 20, 2006.  Neither the debtors nor debtors' counsel raised any objection to the inclusion of paragraph 16 in the Confirmation Order either to the Chapter 13 Trustee directly or to the Court at the confirmation hearing.  Debtors' counsel cannot express any surprise at the inclusion of the provision insofar as identical language has been routinely contained in similar confirmation orders entered by this Court for the last several years.  Moreover, the Confirmation Order was not entered until June 29, 2006, several days after the hearing.  Again, neither the debtors nor the debtors' counsel raised any objection to the inclusion of paragraph 16 in the Confirmation Order.  Therefore, the Chapter 13 Trustee asserts that any objection should have been raised prior to the entry of the Confirmation Order and that the debtors have failed to establish any basis for the Court to reconsider the entry of the Confirmation Order.

In addressing requests to reconsider orders,[2] courts are cautioned to change their rulings sparingly to encourage finality and to conserve judicial resources. In re Mathis, 312 B.R. 912, 914 (Bankr. S.D. Fla. 2004) (citing Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D.Fla.1994); accord Taylor Woodrow Construction Corp. v. Sarasota/Manatee Airport Authority, 814 F. Supp. 1072, 1073 (M.D.Fla.1993)). The only grounds for granting a motion for reconsideration "are newly-discovered evidence or manifest errors of law or fact." In re Kellogg, 197 F.3d 1116, 1119 (11th Cir.1999).[3]  Therefore, reconsideration is appropriate only in limited circumstances to: (1) account for an intervening change in controlling law, (2) consider newly available evidence, or (3) correct clear error or prevent manifest injustice. Mathis, 312 B.R. at 914 (citations omitted).

In this case, the debtors have not (i) identified any meritorious errors of law or fact, (ii) presented any new or previously unavailable evidence, or (iii) demonstrated any intervening change in controlling law.   As such, reconsideration is not appropriate.

<u>Future Tax Refunds Constitute Property of the Estate</u>. However, even if the debtors *had* established a basis for reconsideration, the Court still would have denied the motion holding that the debtors' future tax refunds *do* constitute projected disposable income subject to

---

[2]     Here, the Motion for Reconsideration was filed within 10 days of the entry of the Confirmation Order and shall be treated as a Motion to Alter or Amend Judgment pursuant to Rule 59(e). Mathis, 312 B.R. at 914 (citing Hatfield v. Board of County Commissioners, 52 F.3d 858 (10th Cir.1995); accord Mendenhall v. Goldsmith, 59 F.3d 685 (7th Cir.1995); Goodman v. Lee, 988 F.2d 619 (5th Cir.1993)). Federal Rule of Civil Procedure 59(e) provides as follows:

> **(e) Motion to Alter or Amend Judgment.** Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

[3]     "Motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued." Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1292 (11th Cir. 2001). Rather, such motions should address only factual and legal matters that the Court may have overlooked. Glendon Energy Co. v. Borough of Glendon, 836 F.Supp. 1109, 1122 (E.D.Pa.1993).

administration by the Chapter 13 Trustee. The Court rejects the debtors' argument that paragraph 16 requiring the turnover of the tax refunds violates the historically-based formula set forth in Bankruptcy Code Section 1325(b)(2) for determining their disposable income. Because this holding may affect numerous other pending Chapter 13 cases, an explanation is merited.

When a debtor commences a bankruptcy case, an estate is created consisting of all of the debtor's legal or equitable interests in property as of the petition date. 11 U.S.C. § 541(a). This collection of interests is referred to as "property of the estate." 11 U.S.C. § 541. Unencumbered, non-exempt property of the estate is available to satisfy the claims of a debtor's unsecured creditors.

In Chapter 13 cases, property of the estate is even more broadly defined and includes, in addition to the interests specified in Bankruptcy Code Section 541(a), all post-petition legal or equitable interests acquired by the debtor and earnings from services performed by the debtor, after the commencement of the case but before the case is closed, dismissed, or converted to any other type of case under the Bankruptcy Code. 11 U.S.C. § 1306(a) & (b). A debtor's future federal income tax refund is easily included in the comprehensive definition of "property of the estate" under Bankruptcy Code Sections 541(a) and 1306(a) and (b). In re Lafanette, 208 B.R. 394 (Bankr. W.D. La. 1996) (income tax refunds constitute property of the estate pursuant to Bankruptcy Code Sections 541 and 1306) (citing Matter of Doan, 672 F.2d 831, 833 (11th Cir.1982) (the right to a refund is property of the estate, citing Bankruptcy Code legislative history and Segal v. Rochelle, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966)); In re Beltz, 263 B.R. 525, 527 (Bankr. W.D. Ky. 2001) (all of debtors' federal and state tax refunds received during the Chapter 13 case are property of the estate); In re Mack, 46 B.R. 652 (Bankr. E.D. Pa. 1985) (In a Chapter 13 case, wages earned by a debtor both before and after the petition date are property of the estate; likewise, tax refunds are property of the estate to the same extent as

wages). As such, in this case, the debtors' future tax refunds constitute property of the estate. The issue, then, is whether the debtors must pay these future tax refunds to the Chapter 13 Trustee for distribution to their unsecured creditors.

In the Eleventh Circuit, property of the estate re-vests in the debtor at confirmation[4] unless: (i) the plan or the confirmation order provides otherwise, or (ii) the assets are necessary to fund the plan. In re Santangelo, 325 B.R. 874 (Bankr. M.D. Fla. 2005) (citing 11 U.S.C. § 1327(b) and Telfair v. First Union Mortg. Corp., 216 F.3d 1333 (11th Cir. 2000)). In other words, a debtor with a confirmed Chapter 13 plan retains all property that was not pledged in the plan or confirmation order and that is otherwise not needed to fund the reorganization, unfettered from interference by the Chapter 13 Trustee or the bankruptcy court. Cf. Matter of Gonzalez, 42 B.R. 401 (Bankr. Ga. 1984) ("Sections 1306 and 1327 provide that the debtor retains all property and post-petition income except as provided in the confirmed plan and order to be paid to creditors under the plan. Thus, the debtor is entitled to receive a federal income tax refund where

---

[4] Courts deciding whether property re-vests in a debtor at confirmation have noted a seeming incongruity between two sections of the Bankruptcy Code. One section—Section 1306—defines what property is included as property of the estate; the other section—Section 1327—dictates what happens to property of the estate upon confirmation. Specifically, Bankruptcy Code Section 1306 (in addition to Section 541) defines what property is included as property of the estate after a case is commenced but before it is closed, dismissed, or converted to a case under another chapter of the Bankruptcy Code. Section 1327 provides that property of the estate vests in the debtor at confirmation *unless* the plan or the order confirming the plan otherwise provides. Thus, Section 1306 defines property of the estate without regard to confirmation, only considering dismissal, closing, or conversion, while Section 1327 appears to divide the estate upon confirmation. In re Moore, 312 B.R. 902, 906-08 (Bankr. N.D. Ala. 2004) (observing the tension between the two code sections). Several years ago, the United States Court of Appeals for the Eleventh Circuit issued a controlling ruling, Telfair v. First Union Mortg. Corp., 216 F.3d 1333 (11th Cir. 2000), reconciling the two statutes. In Telfair, the Eleventh Circuit Court of Appeals interpreted Bankruptcy Code Sections 1306(a) and 1327(b) "to mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." Therefore, if a confirmed plan or confirmation order does not require the contribution of what is clearly property of the estate or if the property is not otherwise needed to fund the confirmed plan, the bankruptcy court loses control of the property *after* the confirmation of the Chapter 13 plan.

the debtor's confirmed Chapter 13 plan did not submit the income tax refund for funding of the Chapter 13 plan and the debtor has been current in his Chapter 13 payments to the Chapter 13 trustee."). In this case, the confirmation order clearly establishes that the debtors must pay their future tax refunds to the Chapter 13 Trustee.

<u>Projected disposable income includes future tax refunds</u>.  The debtors argue, however, that this requirement to turnover future tax refunds is over-reaching and unjustified under the statutory changes rendered by BAPCPA.  Specifically, the debtors argue they only need to pay their disposable income as calculated on Official Form B22C, which uses income and expenses incurred six months prior to the date they filed this Chapter 13 case.  Obviously, the debtors, at that point, did not know the amount of their future tax refund for that particular tax year.  They certainly could not predict the amount of any tax refund they may receive five years hence.  As such, the debtors contend that their disposable income calculated six months prior to the petition date freezes their payment obligations during the Chapter 13 case and that they need make no additional payments to their creditors, regardless of any later change in circumstances, such as the receipt of future tax refunds.

In order to address the debtors' argument, the Court will start with a short explanation of the Chapter 13 confirmation process.  Plan confirmation is governed by Bankruptcy Code Section 1325. As relevant here, Bankruptcy Code Section 1325(b)(1)(B) provides that a court may confirm a plan if, as of the effective date of the plan, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."  Thus, Section 1325(b)(1)(B) requires debtors to use all of their "projected disposable income to be received" during the life of the plan to pay their unsecured creditors.

Although the Bankruptcy Code leaves the term "*projected* disposable income" undefined, the term "disposable income" is defined in Sections 1325(b)(2) and (3), relying on historical income and expenses. Specifically, Section 1325(b)(2) provides that disposable income ("DI") equals current monthly income ("CMI") less certain reasonably necessary amounts to be expended, calculated in accordance with Bankruptcy Code Section 707(b)(2)[5] ("707(b)(2) expenses"). CMI is defined in Bankruptcy Code Section 101(10A) as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month[s]" preceding the date of petition. Thus, CMI is actually a compilation of historical income data, reaching back six months prior to the petition date. Again, after CMI is computed, reasonably necessary expenditures calculated in accordance with Bankruptcy Code Section 707(b)(2) are subtracted, and the total yields a debtor's disposable income. Stated differently, DI = CMI – 707(b)(2) expenses.[6]

Since the enactment of BAPCPA, courts have had difficulty interpreting Bankruptcy Code Section 1325(b)(1)(B)'s pronouncement that "all of the debtor's projected disposable income to be received in the applicable commitment period. . . will be applied to make payments

---

[5] Bankruptcy Code Section 707(b)(2) was substantially modified by BAPCPA. The amended Section 707(b)(2) incorporates a test, commonly referred to as the "means test," which was designed to determine whether a Chapter 7 debtor could repay unsecured creditors through a Chapter 13 plan. "By incorporating § 707(b)(2)'s means test into § 1325 for above the median income debtors, the deductions allowed by its provisions from current monthly income drive the level of disposable income a debtor must commit to confirm a chapter 13 plan." In re Devilliers, 2007 WL 92504, *3 (Bankr.E.D.La.2007).

[6] The debtors filed Form B22C, Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, with their petition and schedules. This form is used by Chapter 13 debtors to calculate CMI and the applicable Chapter 13 commitment period. Above median income debtors also use the form to calculate disposable income under Bankruptcy Code Section 1325(b)(2) and to compute the average monthly Chapter 13 plan payment.

to unsecured creditors under the plan." In general, two approaches have evolved, which the Bankruptcy Court for the Eastern District of Louisiana recently summarized in In re Devilliers, 2007 WL 92504, *4 (Bankr.E.D.La.2007):

> A handful of courts have taken the position that in calculating projected disposable income for confirmation, the figure derived by Form B22C, without adjustment for change or deviation brought by post-petition events or pre-petition fluctuations in income or expense, is utilized. Reasoning that BAPCPA installed a mechanical test devoid of discretion or even common sense, these courts refuse to modify the calculations derived from Form B22C regardless of result. *See, e.g., In re Barr,* 341 B.R. 181 (Bankr.M.D.N.C.2006); *In re Alexander,* 344 B.R. 742 (Bankr.E.D.N.C.2006); *In re Guzman,* 345 B.R. 640 (Bankr.E.D.Wis.2006).
>
> Other jurists have reasoned that the calculation of "projected disposable income" differs from that of "disposable income" in that the term "projected" implies a forward, future thinking approach that necessitates consideration of not only the debtor's past history but current circumstance and any anticipated future changes. *In re Edmunds,* 350 B.R. 636 (Bankr.D.S.C.2006). *See also, In re Hardacre,* 338 B.R. 718 (Bankr.N.D.Tx.2006); *In re Jass,* 340 B.R. 411 (Bankr.D.Utah 2006); *In re Renicker,* 342 B.R. 304 (Bankr.W.D.Mo.2006); *In re Kibbe,* 342 B.R. 411 (Bankr.D.N.H.2006); *In re Grady,* 343 B.R. 747 (Bankr.N.D.Ga.2006); *In re Demonica,* 345 B.R. 895 (Bankr.N.D.Ill.2006); *In re Johnson,* 346 B.R. 256 (Bankr.S.D.Ga.2006); *In re Love,* 350 B.R. 611 (Bankr.M.D.Ala.2006); *In re McPherson,* 350 B.R. 38 (Bankr.W.D.Va.2006).

In this case, the debtors urge the Court to ignore their actual income, which would include their future tax refunds, and to instead make the determination of whether their proposed plan commits all of their disposable income based solely on the calculations made in accordance with Bankruptcy Code Section 1325(b)(2). The Court rejects this approach, and the methodology employed in In re Barr, 341 B.R. 181 (Bankr. M.D.N.C. 2006) and its progeny. Instead, the Court adopts the rationale articulated in Devilliers, Hardacre, and other similar cases. The means test is a useful tool to initially calculate an above median income debtor's disposable income, at

a static point in time.[7]   However, the test does not calculate the debtor's *projected* disposable income, which the debtor then must contribute to his Chapter 13 plan.

In Bankruptcy Code Section 1325(b)(1)(B), Congress explicitly modified the term "disposable income" with the additional word—projected. In considering and examining the language of a statute, "the Court must consider two important assumptions. First, the Court must give meaning and import to every word in a statute." In re Jass, 340 B.R. 411, 415 (Bankr.D.Utah 2006) (citing Negonsott v. Samuels, 507 U.S. 99, 106, 113 S.Ct. 1119, 122 L.Ed.2d 457 (1993)). "Second, the Court must presume that 'Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another.'" Jass, 340 B.R. at 415 (citing BFP v. Resolution Trust Corp., 511 U.S. 531, 537, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). Congress included the term "projected" in Bankruptcy Code Section 1325(b)(1)(B) and omitted it from Bankruptcy Code Section 1325(b)(2).

Projected disposable income necessarily has a broader meaning than disposable income. Quite simply, "projected" is a forward-looking term, whereas disposable income relies only on historical income data.  A debtor's payment obligations in a Chapter 13 case involves more than merely multiplying the historical disposable income figure from the means test by the number of months plan payments are required.  Rather, courts must consider changes in circumstances, both increases and decreases to income and expenses, to a debtor's financial situation, being always guided by the allowed methodology set forth in the means test.  For example, parties calculating projected disposable income must use the same income exclusion, e.g. social security income, and use the same allowed IRS standards as permitted in the means test; however, the numbers will change based on changes in the debtor's financial circumstances.   The key date for

---

[7] The means test also is needed to divide those debtors who may file Chapter 7 from those who are limited to Chapter 13 under the "presumption of abuse" test in Bankruptcy Code Section 707(b).

determining projected disposable income is the date the court confirms the debtor's Chapter 13 plan, which is, of course, the same date the court assesses whether the debtor has met all of the standards of Section 1325 of the Bankruptcy Code.

In some cases, perhaps most, the debtor's financial condition may not have appreciably changed between the initial calculation of disposable income and the confirmation hearing. In other cases, historical reality may or may not also be future reality. In those cases, refusing to consider changes in circumstances and robotically relying on the debtor's known-inaccurate historical financial data is tantamount to ignoring the term "projected" that Congress intentionally inserted to modify the term "disposable income." Ergo, since the word "projected" modifies the term "disposable income" in Section 1325(b)(1)(B), the Court shall consider "not only a debtor's historical income and expenses, but also his or her anticipated income and expenses when confirming a plan." Devilliers, 2007 WL 92504, *14 (citing e.g., In re Hardacre, 338 B.R. 722-723; In re Fuller, 346 B.R. at 482-483; In re Edmunds, 350 B.R. at 646-647; In re Kibbe, 342 B.R. 411 (Bankr.D.N.H.2006) In re Demonica, 345 B.R. at 901-902, In re LaSota, 351 B.R. 56, 58 (Bankr.W.D.N.Y.2006) see also, In re Grady, 343 B.R. 747 (Bankr.N.D.Ga.2006)). "By viewing the historical calculations of disposable income through the prism of current circumstance, the Court may both 'project' debtor's future disposable income and give effect to the entirety of the Code's provisions." Devilliers, 2007 WL 92504, *5.

The means test does not permit the over-estimation of tax liabilities. Lastly, even assuming courts were bound by the historical disposable income calculated under the means test in determining Chapter 13 plan payments, the means test imposes an obligation of accuracy on the debtors. Debtors cannot over-estimate the amount of their tax withholdings in order to

increase their tax obligations on the means test and then later reap the benefit by receiving an inflated tax refund when the more accurate tax returns are filed. If the debtors become entitled to a future tax refund, they necessarily over-estimated and over-withheld monies from their earned income, whether intentionally or not.

Part IV of the Official Bankruptcy Code Form B22C, "Calculation of Deductions Allowed Under § 707(b)(2)," permits a debtor to make certain Internal Revenue Service standard deductions. Line 30 of Part IV reads in relevant part as follows:

> Other Necessary Expenses: taxes. Enter the total average monthly expense that you *actually incur* for all federal, state, and local taxes. . . such as income taxes. . .

(*emphasis added*). Thus, the means test allows debtors to deduct the <u>actual</u> expenses for federal, state, and local taxes; it does not allow debtors to over-estimate or over-withhold. Rather, the expense must be the debtor's actual tax liability, no more and no less. To hold otherwise would enable a debtor to maintain a secret savings account, in the form of tax withholdings, at the expense of their unsecured creditors. By requiring the turnover of these future tax refunds to the Chapter 13 Trustee, a court is simply correcting a debtor's error of over-estimating his or her tax liability made when completing the means test. By correcting the error, the amount of the debtor's disposable income automatically increases by the amount of the tax refund the debtor received, which amount rightfully should be paid to the debtor's creditors. Therefore, even if the means test calculations and concomitant historical, frozen-in-time implications are binding, debtors still must turnover future tax refunds to the Chapter 13 Trustee.

Accordingly, for the reasons stated herein, the Motion for Reconsideration is denied. Paragraph 16 of the Confirmation Order directing the debtors to turnover all future tax refunds to the Chapter 13 Trustee is enforceable. A separate order consistent with this memorandum opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, this 9th day of February, 2006.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Debtors: Rogelio A. Laplana and Daisy B. Laplana, 9 Rosseau Road, Apt. 102, North York ON M3H 3GI

Debtors' Counsel: Douglas W. Neway, 135 W. Central Blvd., Suite 310, Orlando, FL  32801

Trustee: Laurie K. Weatherford, P.O. Box 3450, Winter Park, FL  32790

All Creditors and Interested Parties